UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS PEDRITO GONZALES, BOOKING #96408-298,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>E. NOONAN, Warden; M. SMITH; R. STEWERT; T. HARLEY; MR. CORVET; GEO WESTERN REGIONAL DETENTION FACILITY,<br>　　　　　　　　Defendants. | Case No.: 22cv0106-DMS-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;** and<br><br>**(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)** |

　　Plaintiff Jesus Pedrito Gonzales, currently housed at the Metropolitan Correctional Center ("MCC") is proceeding pro se in this civil rights action. (ECF No. 1.) Plaintiff's claims arise from the time he was detained at the Western Region Detention Facility ("WRDF") in San Diego, California. Plaintiff claims he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and deprived of his right to due process under the Fifth Amendment. He names as Defendants GEO Group, Inc.'s

WRDF, a private corporation operating the WRDF under a contract with the federal government, and Correctional Officers employed there by GEO Group, Inc. (*Id*. at 1-3.) In addition, Plaintiff has filed a motion to proceed in forma pauperis ("IFP"). (ECF No. 2).

### I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his prison trust account statement. *See* ECF No. 2 at 10-20; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. This certificate shows that Plaintiff had an available balance of only $0.04 at the time of filing. *See* ECF No. 2. Thus, the Court assesses no initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF No. 2), declines to exact the initial filing fee because his trust account statement indicates he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Warden of MCC or their designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

## II.    SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

### A.    Standard of Review

Because Plaintiff is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B). A complaint filed by any person proceeding IFP is subject to sua sponte dismissal if it is "frivolous, malicious, fail[s] to state a claim upon which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th

Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.")

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting that standard. *Id.*

**B. Plaintiff's Allegations**

On July 21, 2021, Plaintiff arrived at WDRF" run by the GEO Group, Inc., a private corporation retained to operate the facility on "behalf of the U.S. Marshals Service." [2] (Compl. at 4.) Prior to arriving at WDRF, Plaintiff had been hospitalized at Paradise Valley Hospital for four days due to complications from a "cardio condition" causing high blood pressure and chest pains. *Id.* Upon his return, he was stripped searched and placed in a "holding cell in front of the intake area." *Id.*

---

[2] *See* https://www.geogroup.com/facility/detail/facilityID/37 (website last visited March 14, 2022.)

Approximately ten minutes later, Officer Corvet came to the holding cell and told Plaintiff he was going to "go with him to medical so [he] could be medically cleared and housed." *Id.* Corvet directed Plaintiff to walk to the shower area where Corvet told him to "strip out and get naked that he was [going] to do a search before [he] headed to medical." *Id.* Plaintiff informed Corvet that he had already been strip searched but Corvet told him to remove his clothes and he would be searched again. *See id.* Plaintiff asked Corvet to "check video recordings of intake cameras" which would confirm that he had already been strip searched. *Id.* However, Corvet purportedly told Plaintiff "get naked and just [expletive] do it." *Id.* at 5. Plaintiff informed him he did not feel safe with him and asked to speak to his supervisor. *See id.*

Plaintiff felt Corvet was "getting angry" and he believed he "had no choice but to strip out." *Id.* Once Plaintiff was fully undressed, Corvet asked Plaintiff to "pull up [his] testicles and [pull] penis skin back." *Id.* Plaintiff began to "verbally confront[]" Corvet and informed him that he had never been asked to do that before. *Id.* Corvet told Plaintiff to "squat and cough" and Plaintiff complied. *Id.*

Plaintiff alleges he was "humiliated and embarrassed" by Corvet and he "started be[ing] loud which caused Officer Moran to "walk in and ask [Plaintiff] to calm down and control [himself]." *Id.* at 5-6. Plaintiff got dressed and asked to speak to a sergeant. *See id.* at 6. Sergeant Ford came to speak to Plaintiff and told Plaintiff he would "look into it." *Id.*

Plaintiff was escorted to medical and "housed [] in Tank/Dorm #178." *Id.* Plaintiff filed a grievance about what occurred with Corvet. *See id.* After receiving the grievance, "Supervisors Staff" came to speak with Plaintiff and "took pictures" of him. *Id.*

On November 21, 2021, during "recreational yard movement," there was an "incident" between inmates that included inmates who are "validated gang members." *Id.* at 8. Plaintiff, along with the other inmates in his housing unit, are supposed to be kept separate from the validated gang members because they are "gang dropouts." *Id.*

However, staff alleges that another inmate and Plaintiff "were walking by [and] committed a rule violation" when they allegedly "assaulted another inmate." *Id.*  As a result, Plaintiff was placed in the "restrictive housing unit ("RHU") pending a "hearing for a violation of facility regulations rules" for "assaulting any person resulting in serious injury." *Id.*

However, Plaintiff claims that after he was placed in RHU, "no one came to see" him and he was not provided an "incident report." *Id.* at 9.  Plaintiff was housed in the RHU from November 21, 2021 to December 2, 2021.  *See id.*  Plaintiff claims these events violated regulations because he was supposed to be notified within seven days of the charges in writing, "description of the incident, specific rules violated," and his disciplinary hearing conducted.  *Id.*

On December 1, 2021, Officer Smith came to see Plaintiff in the RHU and asked him if he wanted to appear before the disciplinary committee.  *See id.*  Plaintiff agreed and informed him that none of the procedures had been followed and that his hearing had not been conducted in a timely manner.  *See Id.*  Smith told Plaintiff that he was correct and his disciplinary hearing had to be conducted that same day.  *See id.*  However, no one came to conduct his disciplinary hearing.  *See id.*

The following day Plaintiff filed a grievance alleging that his due process rights had been violated and the "disciplinary procedure guidelines and rules had not been met." *Id.* at 10.  Sergeant Gibbs came and housed Plaintiff in intake.  *See id.*  Plaintiff claims Smith arrived and attempted to speak to Plaintiff to "fix his mistakes."  *Id.*

Plaintiff appeared before a Committee hearing on December 2, 2021 where he asked the Chief of Security Stewert why he was "kept in RHU housing." *Id.* at 11.  Stewert responded "you know what you are here for, let's not fool around and play games." *Id.*  Plaintiff informed the Committee that the wrong charges were issued and they failed to conduct his disciplinary hearing in the timeframe required by their own regulations.  *See id.*


Plaintiff alleges his Fifth and Eighth Amendment rights have been violated. He seeks injunctive relief, declaratory relief, and unspecified compensatory and punitive damages. *See id.* at 20.

### C.     Analysis

The Complaint indicates this action is brought under 42 U.S.C. § 1983. (*See* ECF No. 1 at 1.) Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "Section 1983, however, provides no right of action against federal (rather than state) officials." *Russell v. United States Dept. of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999). To the extent Plaintiff has named federal rather than state actors as Defendants, his Complaint is properly construed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*.")

The Defendants named in this action include GEO Group, Inc., a private corporation operating the WRDF under a contract with the federal government, and Correctional Officers employed there by GEO Group, Inc. (ECF No. 1 at 1-3.) Plaintiff may not assert a *Bivens* claim against Defendant GEO Group, Inc. or WRDF. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66-74 (2001) (*Bivens* liability does not extend to a private corporation operating a facility under contract with the federal government); *Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004) (same). As for the remaining Defendants, individual Correctional Officers employed by GEO Group, Inc., Plaintiff's federal constitutional claims are required to be brought, if at all, pursuant to *Bivens*. *Agyeman*, 390 F.3d at 1103.

With respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim, he cannot maintain a *Bivens* cause of action against the individual Defendants. "Where, as here, a federal prisoner seeks damages from privately employed personnel working at

a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law . . ., the prisoner must seek a remedy under state tort law. We cannot simply imply a *Bivens* remedy in such a case." *Minneci v. Pollard*, 565 U.S. 118, 131 (2012). The Ninth Circuit has applied *Pollard* to preclude *Bivens* remedies for Eighth Amendment claims against employees of the GEO Group, Inc. in its capacity of operating a federal immigration detention facility. *See Karboau v. Clark*, 577 Fed.Appx. 678, 679 (9th Cir. 2014) (affirming dismissal of Eighth Amendment claims against individual employees of GEO Group, Inc., because the exclusive remedy is pursuant to state tort law).

To the extent that Plaintiff claims he was denied "due process," the Court liberally construes Plaintiff's claims as a Fifth Amendment due process claim. However, with respect to Plaintiff's Fifth Amendment due process claims arising from the disciplinary proceedings, it is unclear whether Plaintiff can bring a *Bivens* cause of action against the individual Defendants. *See Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018). Since *Bivens* was decided, the Supreme Court has "only expanded this 'implied cause of action' twice." *Ziglar v. Abbasi*, __ U.S. __, 137 S.Ct. 1843, 1854 (2017). The Supreme Court did expand *Bivens* to include a claim brought under the Fifth Amendment due process claim for gender discrimination. *See Davis v. Passman*, 442 U.S. 228 (1979). However, the claim brought by Plaintiff before this Court does not include allegations of gender discrimination.

In *Abbasi*, the Supreme Court held that when seeking to expand *Bivens*, the "first question a court must ask in a case like this one is whether the claim arises in a new *Bivens* context, *i.e.*, whether the case is different in a meaningful way from previous *Bivens* cases decided by the Court." *Vega*, 881 F.3d at 1153 (citing *Abbasi*, 137 S.Ct. at 1864). In *Vega,* the Ninth Circuit held that a federal prisoner's procedural due process claims arising out of prison disciplinary charges presents a "new context" under *Abbasi*.

*Vega,* 881 F.3d at 1154. Therefore, Plaintiff's claims present a "new context" under *Abbasi*.

The Supreme Court has also created a "two-step analysis for determining congressional intent as to the appropriateness of a *Bivens* remedy." *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116, 1120 (9th Cir. 2009) (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). First, a court must determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. "'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega*, 881 F.3d at 1154.

In *Vega*, the Ninth Circuit found that federal inmates had adequate alternative remedies to address alleged due process violations arising from prison disciplinary charges by seeking "'formal review of an issue relating to *any* aspect of his . . . own confinement' under the Administrative Remedy Program ("ARP"), 28 C.F.R. § 542.10(a)," or "assistance of counsel [under] § 542.16(a), appeal[ing] any adverse findings to the Regional Director, § 542.15(a), and then to [Federal Bureau of Prisons]'s General Counsel." *Id.* (quoting *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 74 (2001) (emphasis in original).

Here, throughout his Complaint, Plaintiff acknowledges that he was able to bring grievances arising from the claims that he brings in this action. Plaintiff clearly acknowledges that there was a grievance procedure available. Based on these facts, the Court finds that Plaintiff has demonstrated that he has an "alternative remedial structure." *Abbasi*, 137 S.Ct. 1858.

In addition, there are no factual allegations with respect to Defendant Noonan who is alleged to be the Warden for WRDF. A defendant is liable when he or she "personally participated" in the alleged constitutional deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution.")  To the extent Plaintiff is attempting to contend that Defendant Noonan is liable as a supervisor of the other Defendants, supervisory officials may only be held liable if the Complaint alleges their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."); *Abassi*, 137 S.Ct. at 1860 ("*Bivens* is not designed to hold officers responsible for acts of their subordinates.")

Accordingly, the Court sua sponte dismisses all claims in the Complaint against all Defendants because as currently drafted the Complaint fails to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d at 1112.

### D.  Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend to attempt to sufficiently allege a claim against the dismissed Defendants if he can.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III.  Conclusion and Orders

Good cause appearing, the Court:

1.  **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

/ / /

/ / /

/ / /

2. **DIRECTS** the Warden of the MCC, or their designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Warden, Metropolitan Correctional Center, 808 Union Street, San Diego, California 92101.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and **GRANTS** him 45 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

5. If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

/ / /

/ / /

6. **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form *Bivens* Complaint for use in amending should he choose to do so.

**IT IS SO ORDERED.**

Dated: March 30, 2022

Hon. Dana M. Sabraw
United States District Judge